IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEROME BEARD,

    Plaintiff,

  v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

    Defendant.

No. C 18-06783 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this employment dispute, defendant moves to dismiss certain of plaintiff's claims. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

In 1983, defendant International Business Machines Corporation hired plaintiff Jerome Beard as a software sales representative. Plaintiff excelled. He exceeded his assigned sales quota every year after 2009, received positive performance reviews, and acquired numerous awards for his work. During plaintiff's employment, IBM paid him a salary plus uncapped commissions. IBM would assign plaintiff a revenue target and tie plaintiff's commission compensation to a percentage of the target attained (Compl. ¶¶ 16–18).

In July 2017, IBM sent plaintiff an "incentive plan letter" (or "IPL"), which described his commission plan for the second half of 2017 and set his sales quota at $934,736. During the same period in 2017, plaintiff received and reviewed a PowerPoint presentation which explained the terms of his compensation. This presentation explained that "[i]t cover[ed] the

information you will need to understand your 2017 plan" and repeatedly stated that "payments" under the compensation plan would be "uncapped." These statements were repeated by management during sales meetings and IBM told its managers that "[a]djustments must not be done only as a ceiling or cap on the total earnings allowable to employees" (Compl. ¶¶ 18–27; Dkt. No. 30-1).

In 2017 plaintiff closed two large deals with HCL America, Inc. which generated $25.2 million in revenue subject to commission. The first deal closed in September 2017 for $13.2 million. The second deal, constituting the remaining $12 million in revenue, closed in December 2017. Based on these amounts, plaintiff earned $2,901,806 in commissions. With respect to the September HCL deal, plaintiff's first, second, and third line managers all approved paying the full commission to plaintiff. IBM, however, refused to pay the full amount. Instead, it attribute only two million worth of credit to plaintiff for the September HCL deal and allocated only two million of revenue credit for plaintiff's work closing the December HCL deal. As a result, plaintiff received only $410,572 in commissions (of the nearly three million he had earned). The only explanation plaintiff received from IBM regarding the discrepancy was that the full commission "was simply too much money to pay." At the same time, however, two of plaintiff's peers, both of whom were white, closed deals substantially similar to plaintiff's deals yet received over one million in commissions. When plaintiff's manager called this discrepancy to IBM's attention, it fired the manager in retaliation (Compl. ¶¶ 28–41).

The complaint notes that there are "very similar" cases concerning IBM's compensation policy pending elsewhere in the country. In one such case, *Choplin v. International Business Machines Corporation*, No. 16-cv-1412 (M.D.N.C.), the plaintiff took the depositions of an IBM corporate designee, two of the plaintiff's managers, and a former vice president of sales. According to our plaintiff, this testimony showed that (1) IBM had an "obligation" not to "cap" the commission of salespeople, (2) salespeople were entitled to rely on the statements in the PowerPoint presentations that their commissions would be not be "capped," and (3) what IBM did when it reduced the commissions for plaintiff constituted "capping" (Compl. ¶¶ 43–46).

Plaintiff filed this lawsuit in November 2018, asserting claims for (1) violations of California's Labor Code, (2) violations of California's Unfair Competition Law, (3) race discrimination, (4) unjust enrichment, (5) fraudulent misrepresentation, and (6) negligent misrepresentation. IBM now moves to dismiss a portion of plaintiff's claims (Dkt. Nos. 1, 30). This order follows full briefing and oral argument.[1]

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, courts accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1. **MISREPRESENTATION CLAIMS.**

The elements of a fraud claim are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Unlike fraud, a claim for negligent misrepresentation "does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013).

IBM argues that plaintiff's misrepresentation claims fail because the disclaimers in plaintiff's IPL preclude a showing that plaintiff reasonably relied on any later representations that his commissions would be uncapped. As an initial matter, although plaintiff did not attach a copy of the IPL to his complaint, IBM attaches a copy to its motion to dismiss. While courts generally may not consider material outside the pleadings when assessing the sufficiency of a complaint under FRCP 12(b)(6), *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), the incorporation-by-reference rule is an exception. Incorporation-by-reference is permissible

---

[1] IBM does not move to dismiss plaintiff's claims for race discrimination and equal pay violations.

3

where, as here, "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted). Because the IPL forms the basis of plaintiff's claim and plaintiff does not object to IBM's inclusion of the IPL or dispute its accuracy, this order considers the document in evaluating plaintiff's claims.

IBM highlights three disclaimers in the IPL. *First*, the IPL stated that IBM had the discretion to modify plaintiff's compensation plan (Dkt. No. 30-1 at 2):

> **Right to Modify or Cancel:** The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it. IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing your accepted Incentive Plan Letter if your incentive eligibility status changes.

*Second*, the IPL stated that IBM retained the discretion to review and adjust incentive payments on certain transactions (*id.* at 3):

> **Review of a Specific Transactions:** If a specific customer transaction has a disproportionate effect on an incentive payment when compared with the opportunity anticipated during account planning and used for the setting of sales objectives, or is disproportionate compared with your performance contribution towards the transaction, IBM reserves the right to review and, in its sole discretion, adjust the incentive achievement and/or related payments.

*Third*, IBM explained that it could change incentive payment calculations resulting from errors (*ibid.*):

> **Adjustments for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or communication of sales objectives. Depending on when an error is identified, corrections may be made before or after the last day of the full-Plan period, and before or after the affected payment has been released.

This lawsuit follows a series of lawsuits brought by individual plaintiffs against IBM. As a result, multiple district courts have already evaluated the arguments asserted by the parties here. For example, in *Fessler v. International Business Machines Corporation*, No.

18-cv-0798, 2018 WL 6220209 (E.D. Va. Nov. 28, 2018) (Judge T.S. Ellis, III), the district court dismissed a former IBM employee's claims based on nearly identical allegations. There, as here, the plaintiff alleged that, in addition to receiving an IPL, IBM provided PowerPoint presentations which stated that "payments" and "earnings opportunit[ies]" were "uncapped" and that IBM managers repeated these statements during sales meetings. *Id.* at *2. The district court nevertheless concluded that the plaintiff's fraud claims failed due to a lack of reasonable reliance. *Id.* at *7. Specifically, the district court found that the plaintiff could not establish that he reasonably relied on IBM's statements that commissions would be uncapped because the IPL clearly stated that it did not constitute a promise to make commission payments and that IBM had the authority to modify or eliminate any such payments. *Ibid*. Moreover, there, like here, the plaintiff attempted to rely on the deposition testimony from the *Choplin* case. The district court found these efforts unavailing, concluding that the testimony was insufficient to establish the plaintiff's reasonable reliance in the face of the IPL's disclosures. *Id.* at *7–8.

And, in *Middleton v. International Business Machines Corporation*, Case No. 18-cv-3724 (N.D. Ga. Jan. 2, 2019) (Judge Leigh Martin May), the plaintiff alleged substantially the same factual allegations as asserted here and in *Fessler*. As in *Fessler*, the district court concluded that plaintiff could not demonstrate that his reliance on any statements made in the PowerPoint presentations or by managers in sales meetings was justifiable in light of the IPL's disclosures. The IPL at issue in *Middleton* contained a provision that is absent from the IPL in the instant case. There, the IPL also stated:

> Managers below the highest levels of management do not know whether IBM will or will not change or adopt any particular compensation plan; they do not have the ability to change the Plan terms for any employee; nor are they in a position to advise any employee on, or speculate about, future plans. Employees should make no assumptions about the impact potential Plan changes may have on their personal situations unless and until any such change are formally announced by IBM.

Based on this provision, the *Middleton* court concluded that the plaintiff could not justifiably rely on statements made by IBM's managers during sales meetings because the IPL specifically stated that such managers lacked the authority to bind IBM to statements regarding compensation. As to statements in PowerPoint presentation, the court determined that the

5

plaintiff's reliance was unreasonable as a matter of law in the face of "the breadth and clarity of the disclaimers in the IPL."

Plaintiff argues that *Fessler* and *Middleton* "got it wrong," pointing instead to *Vinson v. International Business Machines Corporation*, Case No. 17-cv-0798, 2018 WL 4608250 (M.D.N.C. Sept. 25, 2018) (Judge Thomas Schroeder), a decision that reached a different result. There, the district court determined that the disclosures in the plaintiff's IPL did not foreclose reasonable reliance on IBM's PowerPoint presentations because the IPL only reserved IBM's discretion to modify or cancel incentive payments "up until any related payments have been earned under the Plan," and that therefore "whether IBM actually capped [the plaintiff's] commissions and misrepresented its policy on capping depends on facts not before the court." *Id.* at *10. The *Vinson* plaintiff's misrepresentation claims accordingly survived IBM's motion to dismiss.

While *Fessler*, *Middleton*, and *Vinson* are not binding on this district court, this order finds the reasoning of *Vinson* more convincing. As alleged in the complaint, plaintiff accepted the terms of his IPL in July 2017. Following his receipt of the IPL, plaintiff received the PowerPoint presentation which repeatedly and without reservation stated that his compensation would not be capped. His managers said the same. Plaintiff then worked hard to earn a large commission that IBM later capped (or so a jury might reasonably find). This order concludes that even though the IPL contained disclosures regarding IBM's "right to adjust the Plan terms" the complaint alleges sufficient facts to plausibly suggest that plaintiff reasonably relied on statements in the PowerPoint presentation and by management assuring plaintiff that IBM would not cap his compensation. It will be a question of fact for the jury whether the reliance was reasonable. Because plaintiff has pled facts plausibly suggesting reasonable reliance on misrepresentations regarding "uncapped" commissions, the motion to dismiss plaintiff's negligent misrepresentation claim is **DENIED**.[2]

---

[2] Among other non-binding decisions, IBM cites *Kemp v. International Business Machines Corp.*, No. 09-cv-4683, 2010 WL 4698490 (N.D. Cal. Nov. 8, 2010) (Judge Marilyn Hall Patel), and *Pfeister v. International Business Machines Corp.*, No. 17-cv-03573, 2017 WL 4642436 (N.D. Cal. Oct. 16, 2017) (Judge Donna Ryu). Neither of these decisions address allegations regarding statements made by IBM's managers or

6

Plaintiff's claim for fraudulent misrepresentation must also meet FRCP 9(b)'s heightened pleading standard. To the extent plaintiff's fraud claim is based on statements made by his managers, the complaint lacks allegations regarding "the time, place and specific content of the false representations as well as the identifies of the parties to the misrepresentations." *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988) (citation omitted). For example, the complaint fails to identify the IBM managers who allegedly represented that plaintiff's commissions were uncapped or the specific statements made by those individuals. This is insufficient to meet the heightened pleading threshold of FRCP 9(b). By contrast, the complaint's allegations regarding the misrepresentations contained in the PowerPoint are sufficiently particular to meet FRCP 9(b)'s requirements, as the complaint alleges the specific content of the misleading statements, the timing of the statements, and the manner in which those statements were made.

IBM next argues that, in light of the IPL's disclosures, the complaint fails to allege an intent to deceive. This order disagrees. The complaint alleges that IBM knew that an "uncapped commissions" program was highly motivating to sales representatives and incentivized them to pursue large deals despite long hours and repeated out-of-town travel. In plaintiff's highly-competitive sales field, the complaint alleges, most employers do not cap commissions. Were IBM to disclose that it capped commissions, it would severely hamper its efforts to recruit good salespeople. Moreover, IBM has allegedly failed to clarify its compensation practices despite receiving frequent calls from sales representatives and managers upset about having their commissions capped (Compl. ¶¶ 4–5, 42). This is sufficient to allege an intent to deceive. Accordingly, to the extent based on statements by IBM managers, the

---

in IBM's PowerPoint presentations. And, although *Schwarzkopf v. International Business Machines, Inc.*, No. 08-cv-2715, 2010 WL 1929625 (N.D. Cal. May 12, 2010) (Judge Jeremy Fogel), did resolve a fraud claim based on an IBM manager's statements, the decision followed summary judgment and a fully-developed factual record.

7

motion to dismiss plaintiff's fraud claim is **GRANTED**. The motion to dismiss plaintiff's fraud claim is otherwise **DENIED**.[3]

### 2. SECTION 221 OF THE CALIFORNIA LABOR CODE.

Under Section 221 of the California Labor Code, it is "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." "[A]n employee's 'wages' or 'earnings' are the amount the employer has offered or promised to pay, or has paid pursuant to such an offer or promise, as compensation for that employee's labor." *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217, 228 (2007) (emphases omitted). While commission payments can qualify as wages for purposes of Section 221, "[t]he right of a salesperson or any other person to a commission depends on the terms of the contract for compensation." *See Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1329–30 (2006). Accordingly, plaintiff's Section 221 claim "requires some showing that he is contractually entitled to the commissions he claims to have been denied." *Kemp*, 2010 WL 4698490, at *6. Plaintiff concedes that his Section 221 claim depends on whether or not the IPL is a binding contract (Opp. at 20). Yet, as explained by Judge Patel in *Kemp*, IBM's compensation plan forecloses this conclusion because it "expressly specifies that it 'does not constitute an express or implied contract or a promise by IBM to make any distributions under it." The motion to dismiss plaintiff's Section 221 claim is accordingly **GRANTED**.[4]

### 3. SECTION 2751 OF THE CALIFORNIA LABOR CODE.

Effective January 2013, Section 2751 of the California Labor Code requires that whenever an employer enters into a contract of employment with an employee, the employer must provide a written contract to the employee if the employee will be paid a commission for services rendered in California. Cal. Lab. Code § 2751(a). In addition to being in writing, the contract must set forth the method by which the commissions will be computed and paid. *Ibid*. An employer must then give a "signed" copy of the contract to the employee and obtain a

---

[3] Plaintiff argues that he has "stated a claim for punitive damages" (Opp. at 22), yet no "claim" for punitive damages is asserted in the complaint.

[4] Plaintiff concedes that Section 223 of the California Labor Code does not provide him a private right of action. The motion to dismiss this claims is **GRANTED**.

8

receipt for the contract from the employee. *Id.* at § 2751(b). Section 2751 does not specify a remedy for a violation of its requirements.

Here, plaintiff has sufficiently alleged that IBM violated Section 2751 by failing to state in writing "the method by which the commissions shall be computed and paid." Notably, however, the Labor Code no longer provides a private right of action for a violation of Section 2751. Prior to January 2012, Section 2752 provided that "[a]ny employer who does not employ an employee pursuant to a written contract as required by Section 2751 shall be liable to the employee in a civil action for triple damages." When the California Legislature amended Section 2751 in 2011, it repealed Section 2752. Stats. 2011, ch. 556, § 3. Because the Labor Code no longer affords a private right of action for violations of Section 2751, the motion to dismiss this standalone claim is **GRANTED**. This violation may nevertheless serve as a predicate violation for plaintiff's Section 17200, as explained below.

### 4. SECTION 1668 OF THE CALIFORNIA CIVIL CODE.

Plaintiff alleges that by including terms within the IPL which purportedly allowed IBM to retroactively change commission terms, IBM impermissibly attempted to limit its liability for fraud in violation of Section 1668 of the California Civil Code. Section 1668 provides:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Section 1668 "codifies the general principle that agreements exculpating a party for violations of the law are unenforceable." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430 (9th Cir. 2015). The IPL contains no term which purports to limit IBM's liability for fraudulent conduct or waive plaintiff's ability to bring such a claim. To be sure, plaintiff's misrepresentation claims may ultimately fail in light of the IPL's disclosures regarding the terms of the compensation plan. But plaintiff's inability to prove his claims in the face of the compensation agreement does not amount to an exemption for fraudulent conduct. IBM's motion to dismiss the Section 1668 claim is **GRANTED**.

9

### 5. UNJUST ENRICHMENT.

Unjust enrichment is not a cause of action or even a remedy "but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (quotation marks omitted). As such, a claim for unjust enrichment is properly pled as a claim for a contract implied-in-law. It "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Since "[a] party may state as many separate claims or defenses as it has, regardless of consistency," plaintiff may properly assert claims based on both the existence and the absence of a binding agreement between the parties. FRCP 8(d)(3). As set forth above, plaintiff has sufficiently alleged that he provided IBM with a benefit for which he was not fairly compensated. The motion to dismiss this claim is accordingly **DENIED**.

### 6. CALIFORNIA'S UNFAIR COMPETITION LAW.

California's Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*. "An act can be alleged to violate any or all of the three prongs of the UCL — unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). The law effectively "'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation omitted). Because plaintiff has alleged misrepresentation claims and violations of the California Labor Code, the motion to dismiss this claim is **DENIED**.

**CONCLUSION**

For the reasons stated, IBM's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff shall have until **APRIL 25 AT NOON** to file a motion, noticed on the normal 35-day track, for leave to amend his claims (failing which IBM's answer is due **FOURTEEN CALENDAR DAYS** thereafter). A proposed amended complaint must be appended to this motion and the motion should clearly explain how the amended complaint cures the deficiencies

identified herein as well as any deficiencies identified in IBM's motion but not reached in this order. Plaintiff must plead his best case.

**IT IS SO ORDERED.**

Dated: April 7, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE